SIXTH DIVISION
March 28, 2008

No. 1-07-1793

| | |
|---|---|
| *In re* ESTATE OF GRACE ELLIS, Deceased | ) |
| | ) |
| (Shriners Hospital for Children, | ) |
| | ) |
|     Petitioner-Appellant | ) |
| | ) |
|       v. | ) Appeal from |
| | ) the Circuit Court |
| James G. Bauman, Individually and as Executor of the Estate of Grace | ) of Cook County |
| Ellis, Deceased, | ) |
| | ) 03 P 08067 |
|     Respondent-Appellee | ) |
| | ) Honorable |
| (John W. Ellis, Robert E. Ludlow, William E. Ludlow, Kenneth R. Ellis, | ) James W. Kennedy, |
| Robert K. Ellis, Robert W. Burrill, Sharon Burrill Roark, Kenneth B. | ) Judge Presiding |
| Burrill, Harding E. van Schaack, Suzanne Kirchoff, Beatrice V.S. Bock, | ) |
| Margaret E. Warkentin, Wendy Ludlow, Elizabeth Hedquist, William | ) |
| Ellis, and Frances Haswell, | ) |
| | ) |
|     Respondents)). | ) |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Shriners Hospitals for Children (Shriners) appeals from a circuit court order dismissing with prejudice its "Petition to Contest Will and for Other Relief." The issue on appeal is whether the six month period set out in section 8-1 of the Probate Act of 1975 applies to a claim for tortious interference with an inheritance expectancy. 755 ILCS 5/8-1 (West 2004).

Decedent Grace Ellis, of Skokie, Illinois, was an only child who never married or had children. When Ellis died in 2003 at the age of 86, she left a multimillion dollar estate. She executed a will in 1964 designating her elderly parents as the primary beneficiaries of her estate and her descendants and petitioner Shriners as the contingent beneficiaries. In 1999,

approximately four years before her death, she executed a new will which omitted the previous

beneficiaries and named respondent James G. Bauman as the sole beneficiary and executor of her

estate. Shortly after Ellis died, Bauman filed the 1999 will in the probate division of the circuit

court of Cook County on October 16, 2003. On October 29, 2003, the court issued an order

admitting the will to probate and naming Bauman as the estate's independent executor. A will

admitted to probate is valid until the will is set aside. *In re Estate of MacLeish*, 35 Ill. App. 3d

835, 842, 342 N.E.2d 740, 746 (1976). Notice was given to Ellis' two paternal cousins and 12 of

their children and grandchildren. The two cousins subsequently sued but settled with Bauman and

the estate, and none of Ellis' relatives are participating in this appeal. Nearly three years after

Ellis' last will was admitted to probate, Shriners initiated a will contest on August 8, 2006, which

included a claim of mental incapacity and allegations against Bauman of undue influence and

tortious interference with an inheritance expectancy. Bauman motioned for the dismissal of

Shriners' petition on the basis of section 2-615 of the Code of Civil Procedure, arguing the claims

were time-barred by the six-month period specified in section 8-1 of the Probate Act of 1975.

735 ILCS 5/2-615 (West 2004); 755 ILCS 5/8-1 (West 2004).[1] The court granted Bauman's

motion and dismissed the pleading with prejudice. Shriners contends the court misconstrued the

plain language of the statute and the relevance of cases such as *Robinson v. First State Bank of*

---

[1] Shriners notes that section 2-615 provides a means to challenge the factually sufficiency

of a petition, which Bauman did not do, and that section 2-619(a)(5) provides for the dismissal of

a pleading which is untimely filed. 735 ILCS 5/2-615, 2-619(a)(5) (West 2004). Shriners,

however, is not arguing it was prejudiced by Bauman's misdesignation.

1-07-1793

*Monticello*, 97 Ill. 2d 174, 454 N.E.2d 288 (1983), and *In re Estate of Jeziorski*, 162 Ill. App. 3d 1057, 516 N.E.2d 422 (1987).

Although Shriners' notice of appeal indicated it was challenging the dismissal of all three counts, its arguments on appeal are limited to the viability of the third claim. Shriners has effectively waived review of its claims of mental incapacity and undue influence (counts I and II), and we now affirm the circuit court's dismissal of those counts. *Blake v. Hy Ho Restaurant, Inc.*, 273 Ill. App.3d 372, 376, 652 N.E.2d 807, 811 (1995) (failure to argue results in waiver for purposes of appeal); 210 Ill. 2d R. 341(h)(7) (formerly Supreme Court Rule 341(e)(7), points not argued in the opening appellate brief are waived).

The statute at issue provides in relevant part:

"(a) Within 6 months after the admission to probate of a domestic will in accordance with the provisions of Section 6-4, *** any interested person may file a petition in the proceeding for the administration of the testator's estate or, if no proceeding is pending, in the court in which the will was admitted to probate, to contest the validity of the will." 755 ILCS 5/8-1 (West 2004).

In *Ruffing v. Glissendorf*, 41 Il. 2d 412, 429, 243 N.E.2d 236, 240 (1968), the supreme court determined the statute's six-month window (then nine months) is not a statute of limitations which may be tolled by fraudulent concealment or other impropriety and is instead a jurisdictional limitation which is not tolled by any fact not provided for in the statute. Thus, because Ellis' will was not contested in a direct proceeding within the six-month statutorily prescribed time period, it

3

1-07-1793

is considered valid for all purposes. *Robinson*, 97 Ill. 2d at 183, 454 N.E.2d at 293. Moreover, if section 8-1 is applicable to Shriners' intentional tort claim, allegations of impropriety cannot save the claim from dismissal.

Shriners points out that section 8-1 does not expressly refer to claims of intentional inference with an inheritance expectancy. 755 ILCS 5/8-1 (West 2004). Shriners argues that based on its plain language, section 8-1 governs only claims that are designated as will contests, and that the circuit court's ruling to the contrary violated the legislature's intent. The primary rule of statutory construction is to ascertain and give effect to legislative intent. *Hunter v. Southworth Products Corp.*, 333 Ill. App. 3d 158, 163, 775 N.E.2d 238, 242 (2002). When construing a statute, a court must not depart from the plain meaning of language employed by the legislature and "will not, under the guise of statutory interpretation, supply omissions; remedy defects; annex new provisions; *** [or] add exceptions, limitations, or conditions [to the statutory language]." *Hunter*, 333 Ill. App. 3d 164, 775 N.E.2d at 243. Shriners emphasizes that where a statute "lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation." *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 442, 593 N.E.2d 522, 527 (1992). This latter principle has no application here, because the statute does not include a list. In the case Shriners is citing, the court resolved whether a statute listing "'all actions *** *based on negligence, or product liability based on strict tort liability'*" also fairly encompassed actions based on willful or wanton conduct. (Emphasis in original.) *Burke*, 148 Ill. 2d at 442, 593 N.E.2d at 527, quoting Ill. Rev. Stat. 1989, ch. 110, par. 2-1116. A second example of the statutory list or statutory

4

1-07-1793

enumeration concept is *Department of Corrections v. Illinois Civil Service Comm'n*, 87 Ill. App. 3d 304, 309, 543 N.E.2d 190, 194 (1989), in which the court addressed whether regulations listing "bribes, gifts or gratuities" as prohibited transactions was intended to prevent an employee of the Department of Corrections from accepting a loan from a former inmate. The statute at issue here refers to a single type of action and does not enumerate other causes. In any event, Shriners' construction of the statute is implausible because it would time-bar the allegations Shriners captioned as an undue influence claim against Bauman, yet have no effect on virtually the same allegations captioned as an intentional interference claim.

In count I of its "Petition to Contest Will and for Other Relief," entitled "Undue Influence," Shriners alleged:

> "31. Grace was mentally frail, vulnerable and frequently hospitalized toward the end of her life.
>
> 32. Upon learning of Grace's finances and mental and familial circumstances, Bauman set forth upon a scheme to unduly influence Grace to provide Bauman with the entirety of her estate both prior to and upon her death.
>
> 33. Abusing his position as minister to Grace, and in breach of his fiduciary duties, Bauman unduly influenced Grace to execute a will dated August 9, 1999 at the office of his attorney, which names Bauman as executor and sole beneficiary."

The operative allegations reappear in count III, entitled "Intentional Interference with an

1-07-1793

Expectancy":

"38.   With knowledge of the existence and contents of Grace's will and estate plan, [Bauman] set forth on an intentional scheme to interfere with [Shriners'] expectancy for his own personal benefit.

39.   [Bauman] interfered with [Shriners'] expectancy by such conduct as:

a.)  Abusing his position of trust as minister to Grace.

b.) Unduly influencing Grace to execute a new will on August 9, 1999, which named him as executor and sole beneficiary, thereby overcoming Grace's long term desire to leave her estate to [Shriners].

c.) Violating his fiduciary duty to Grace as her minister and spiritual advisor.

d.) Taking advantage of Grace's age, diminished mental and physical capacity.

e.)  Violating his fiduciary duties as holder of Grace's Power of Attorney for property.

***

g.)  Influencing Grace to purchase him gifts and luxuries such as automobiles prior to her death."

6

We cannot conclude the legislature intended to bar a will contest as untimely after six months yet allow the same allegations to proceed in the tort arena. Shriners' construction of section 8-1 leads to an absurd result and is contrary to the rule of statutory construction that one must "presume that the legislature did not intend absurdity, inconvenience, or injustice." *Hunter*, 333 Ill. App. 3d at 163, 775 N.E.2d at 242. Moreover, we consider *Robinson* instructive on this issue. *Robinson*, 97 Ill. 2d 174, 454 N.E.2d 288. *Robinson* involves a slightly different set of facts, in that the plaintiffs considered filing a will contest within the six-month time period, but refrained after reaching a settlement agreement with defendants. The plaintiffs, however, had a change a heart and filed a petition alleging there was not only impropriety in the making of the will but also impropriety in the settlement agreement. *Robinson*, 97 Ill. 2d 174, 454 N.E.2d 288. The circuit court dismissed the pleading, and on appeal, the supreme court cited the settlement arrangement as one of the reasons it was rejecting the plaintiffs' intentional interference claim:

> "In this case, where a will has been admitted to probate and where
>
> the plaintiffs have engaged an attorney to determine whether they
>
> should file a will contest, have decided not to contest the will, have
>
> entered into a settlement agreement for the $125,000 (agreeing to
>
> release the other parties to the agreement *** from any and all
>
> claims and causes of action arising from any will, codicil or other
>
> undertaking by the parties), and have allowed the statutorily
>
> prescribed period in which to contest the will to expire (thereby
>
> establishing the validity of the will), we will not recognize a tort

action for intentional interference with inheritance." *Robinson*, 97

Ill. 2d at 184, 454 N.E.2d at 293.

Shriners contends this quote demonstrates the supreme court refused to recognize a tort action in

*Robinson*, not because of section 8-1, but because the court was enforcing the parties' $125,000

settlement agreement.  755 ILCS 5/8-1 (West 2004); *Robinson*, 97 Ill. 2d 174, 454 N.E.2d 288.

Shriners further argues that the circuit court failed to recognize this important distinction and

gave an overly expansive reading to the case.  We disagree and conclude that while *Robinson*'s

holding is limited to the specific facts of that case, the supreme court's analysis of section 8-1 is

generally applicable here.  The supreme court continued:

"It seems obvious that the purpose of section 8-1 of the

Probate Act of 1975 is to limit the time within which the validity of

a will may be questioned and to create stability in the administration

of estates.  *** [In] *Pedersen v. Dempsey*[, 341 Ill. App. 141, 143,

93 N.E.2d 85 (1950)], *** the court stated that the reasons for the

time limit in filing a will contest was 'the pressing importance of

securing an orderly settlement of estates, to prevent embarrassment

to creditors and others, and to avoid as much as confusion as

possible in the vast amount of property rights and titles that pass

through probate.' [Citation.]

\* \* \*

We wish to make it clear that we believe that section 8-1

8

was enacted in an attempt to make the administration of an estate as orderly as possible because of the gravity of the interests at stake; we therefore refuse to have section 8-1 circumvented by allowing the plaintiffs in this case to maintain a tort action which in its practical effect would invalidate a will that has become valid under the Probate Act of 1975. The appellate court [properly] found that, '[i]f the will is valid, it cannot reasonably be said that plaintiffs have suffered as in tort' ([*Robinson v. First State Bank of Monticello*, 104 Ill. App.3d 758, 761, 433 N.E.2d 285 (1982)]) ***. We believe that to allow the complaint to be filed here would permit the issue of undue influence, which would have been grounds for a will contest, to be litigated years after the will was admitted to probate and immune from contest on this issue.

We conclude that the trial court correctly dismissed all three counts of the plaintiffs' complaint." *Robinson*, 97 Ill.2d at 185-86, 454 N.E.2d at 294.

Similarly, here, allowing Shriners to proceed on its allegations that Bauman tortiously interfered with an inheritance expectancy, by abusing his position as Ellis' trusted advisor and "[u]nduly influencing [her] to execute a new will on August 9, 1999, which named him as executor and sole beneficiary, thereby overcoming Grace's long term desire to leave her estate to [Shriners]," would permit the grounds for a will contest to be litigated years after the will was admitted to probate

and became immune from contest. Allowing Shriners to proceed on its untimely allegations would be contrary to the legislature's intent.

Shriners cites *In re Estate of Jeziorski*, 162 Ill. App. 3d 1057, 516 N.E.2d 422 (1987), *In re Estate of Knowlson*, 204 Ill. App. 3d 454, 562 N.E.2d 277 (1990), and *In re Estate of Hoover*, 160 Ill. App. 3d 964, 513 N.E.2d 991 (1987), for the proposition that an action for tortious interference with an inheritance expectancy will lie when there is a lack of probate remedy. Shriners' reliance on these cases is misplaced, however, because in each instance, the tort claims were filed within the six-month period specified in the statute, unlike the petition Shriners filed more than two years after Ellis' 1999 will was admitted to probate.

In the first of the three cases, the timely filed will contest included alternative allegations of tortious interference with an expectancy and abuse of a confidential relationship, but the probate judge erroneously concluded the latter claims should proceed in the law division of the circuit court. *Jeziorski*, 162 Ill. App. 3d at 1058, 516 N.E.2d at 423. In reversing the dismissal order, the appellate court specified "plaintiffs brought their action within the six-month statutory time limit for filing a will contest and asserted their tort action as part of the proceedings." *Jeziorski*, 162 Ill. App. 3d at 1062, 516 N.E.2d at 425. The appellate court also emphasized Illinois favors the orderly administration of estates and that the legislative purpose "in passing probate acts is to ensure that all claims relating to the administration of estates are handled in the probate proceedings, thereby providing a single forum for settling the rights of the parties." *Jeziorski*, 162 Ill. App. 3d at 1062, 516 N.E.2d at 425-26. The court reasoned, "it is consistent with these goals to allow plaintiffs to adjudicate their several claims and the relief they are seeking

10

in one proceeding" (*Jeziorski*, 162 Ill. App. 3d at 1062, 516 N.E.2d at 425-26), and concluded "litigation of this nature should not be pled in separate complaints and plaintiffs should be allowed to proceed in the probate division on all counts in their complaint." *Jeziorski*, 162 Ill. App. 3d at 1063, 516 N.E.2d at 426. Thus, *Jeziorski* stands for the proposition that a timely filed will contest may include alternatively pled tort causes of action, and it is not a basis for Shriners' contention that its tort allegations are viable even though its will contest is undisputedly time-barred. *Jeziorski*, 162 Ill. App. 3d 1057, 516 N.E.2d 422.

Likewise, in the second case, count V of the plaintiffs' timely petition to contest the decedent's will sought tort damages on the basis of interference with their expectancies. *Knowlson*, 204 Ill. App. 3d at 458, 562 N.E.2d at 280. The opinion specifies the "1981 will was admitted to probate on April 17, 1985" and, less than six months later, "On October 16, 1985, petitioners filed the [multicount] will contest" which included count V's allegations that "Barbara wrongfully interfered with their expectancies by using duress, fraud, and undue influence, causing Norah to make numerous *inter vivos* transfers of property *** and leave Barbara [additional assets in her will]." *Knowlson*, 204 Ill. App. 3d at 456, N.E.2d at 279. The probate judge erroneously concluded count V was duplicative of the plaintiffs' will contest counts. *Knowlson*, 204 Ill. App. 3d at 458, 562 N.E.2d at 280. There was, however, a possibility that none of the decedent's multiple prior wills would be validated by the probate court, which meant bequests to the plaintiffs would be substantially reduced and "adequate relief [was] not assured absent a tort action." *Knowlson*, 204 Ill. App. 3d at 458, 562 N.E.2d at 281. Therefore, *Knowlson* is fairly cited for the proposition that in certain probate proceedings it is permissible to plead a tort action

11

in the alternative. *Knowlson*, 204 Ill. App. 3d at 458, 562 N.E.2d at 281. The case does not allow Shriners to circumvent section 8-1. 755 ILCS 5/8-1 (West 2004).

In the third case, it was specified that on November 18, 1985, the decedent's will and eight codicils were admitted to probate, and on April 30, 1986, the plaintiffs filed claims of undue influence, lack of testamentary capacity, revocation of the will, and intentional interference with expectancies. *In re Estate of Hoover*, 160 Ill. App. 3d at 965, 513 N.E.2d at 992. Further discussion of the case would only belabor the point that Shriners lacks support for its appeal.

Finally, Shriners draws attention to its allegations that Bauman's "scheme" allowed him to obtain fraudulent *inter vivos* transfers of money, property, and other assets from Ellis. Shriners argues these allegations show it brought more than a will contest alone. However, Shriners' only interest in the *inter vivos* transfers stems from the 1964 will. These allegations would have been relevant in a timely challenge to the 1999 will, but now they amount to nothing more than a collateral attack on the order admitting the 1999 will to probate.

We do not find Shriners' interpretation of section 8-1 of the Probate Act of 1975 and related case law to be persuasive. 755 ILCS 5/8-1 (West 2004). Regardless of how Shriners styled its allegations, they were a challenge to the validity of Ellis' last will and they were time-barred by section 8-1. 755 ILCS 5/8-1 (West 2004). In section 8-1, the legislature established a firm time-line for contesting wills and Shriners' allegations of fraud or undue influence cannot upset an order of probate after the time provided. See *Pedersen*, 341 Ill. App. at 143, 93 N.E.2d at 86 (the legislature limited the time for will contests due to "the pressing importance of securing an orderly settlement of estates, to prevent embarrassment to creditors and others, and to avoid as

12

much as confusion as possible in the vast amount of property rights and titles that pass through probate"). Accordingly, we affirm the judgment of the circuit court dismissing Shriners' tort claim with prejudice.

Affirmed.

McNULTY and O'MALLEY, JJ., concur.